IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| Joanna Burke | ) | CIVIL ACTION No. |
| | ) | 4:24-cv-00897 |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Deutsche Bank National Trust Company, PHH | ) | |
| Mortgage Corporation, AVT Title Services, | ) | |
| LLC, Mackie Wolf Zientz & Mann, PC, Judge | ) | |
| Tami Craft aka Judge Tamika Craft-Demming, | ) | |
| Judge Elaine Palmer, Sashagaye Prince, Mark D | ) | |
| Hopkins, Shelley L Hopkins, Hopkins Law, | ) | |
| PLLC, John Doe, and/or Jane Doe | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

United States Courts
Southern District of Texas
F I L E D

OCT 07 2024

Nathan Ochsner, Clerk of Court

## VERIFIED RESPONSE TO PHH MORTGAGE CORPORATION'S MOTION TO DECLARE PLAINTIFF JOANNA BURKE AS A VEXATIOUS LITIGANT

TO THE HONORABLE JUDGE AND ALL INTERESTED PARTIES:

"[Attorney] Klayman's <u>six</u> lawsuits are neither so prolific nor so frivolous or harassing in their content that they threaten the order or integrity of the courts' operations…Klayman's <u>six</u> suits…do not amount to an intractable flood… in extending the pre-filing injunction to cover filings in all courts, state and federal, as well as "any other forum," the district court went too far…we vacate the district court's pre-filing injunction."

*Klayman v. Porter*, 104 F.4th 298, 307 (D.C. Cir. 2024)

Plaintiff, Joanna Burke responds to the Defendants motion which should be DENIED for the following reasons:

### DEFENDANTS MOTION PRACTICE IS SCANDALOUS

The Defendants odious motion practice is well known to the Plaintiff. They consistently

1

focus on making grossly false statements designed to inflict maximum injury on the law-abiding elder Plaintiff. In this instance, the deception begins with a comparison between the Defendants' first motion and their second motion.

In their first motion, the Defendants claimed that the Plaintiff had filed <u>six</u> (Doc.11, p.3(3)) lawsuits. Now, this number has suddenly increased to <u>seven</u> (Doc.28, p.2(3)). The new lawsuit the Defendants attribute to the Plaintiff is the 2011-2018 case filed in this court by DBNTCO, not by the Plaintiff herself. Clearly, the Defendants are aware of the *Klayman* opinion and have chosen to manipulate their pleadings through deception, presenting yet another blatant lie. *Dondi Properties Corp. v. Commerce Sav. and Loan Ass'n,* 121 F.R.D. 284 (N.D. Tex. 1988) sets standards including candor, diligence, respect, personal dignity, and professional integrity.

In stark contrast, the Defendants reject the principles set forth in *Dondi*. Instead, they resort to bad faith motions driven by sinister motives, all while injuring an elder widow in a blatant attempt to illegally purloin her home. Their reliance on proven lies, deception and concealment qualifies them for sanctions due to their malevolent misconduct.

## SEVEN REASONS WHY THIS VEXATIOUS MOTION SHOULD BE DENIED

1. **Lack of Subject-Matter Jurisdiction:** The Plaintiff asserts this court lacks subject-matter jurisdiction, undermining the Defendant's motion. Without jurisdiction, the court cannot adjudicate issues, rendering motions moot (See Plaintiff's VERIFIED MOTION TO DISMISS FOR LACK OF JURISDICTION, Oct. 3, 2024). While the Plaintiff acknowledges ancillary motions can be decided without jurisdiction, it does not save this motion as the court lacks *capacity* to act (see 2).

2. **The Court Has No Capacity to Act:** A judgment is void if the court lacks capacity to act (*Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)). Therefore, the Plaintiff asserts this

2

court cannot rule on ancillary motions, including this one.

3. **No Immunity for Judicial Usurpation:** Plaintiff alleges this court's continued involvement absent jurisdiction and capacity to act constitutes usurpation of judicial power, confirming a judgment is void (*In re Abbott*, 954 F.3d 772, 782 (5th Cir. 2020); *Will v. United States*, 389 U.S. 90, 95 (1967)). There's no judicial immunity for void orders (*Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980)).

4. **Unique and Separate Purposes of Each Lawsuit:** The Plaintiff details the unique purposes of each lawsuit, emphasizing that Defendants cannot meet the high burden to restrict Plaintiff's access to the courts or mislabel her as a vexatious litigant.

5. **Defendants Cannot Prove the Loan Exists:** Defendants focus on numerosity, falsely listing cases and motions. The Plaintiff's lawsuits and interventions always strived to obtain key evidence to prove the non-existence of a loan file or lender application fraud. Additionally, any purported loan relying upon a void lien has been extinguished by the operation of law.

6. **Procedural Contest and Due Process Violations:** The Plaintiff contests the Defendants' motion procedurally, arguing their reliance on 28 U.S.C. §1651(a) fails because Defendants cannot invoke 1651(a) in this motion to circumvent due process requirements, only the court. As established in *Welsh v. Lamb Cnty.*, 5:20-CV-00024-H (N.D. Tex. Sep. 16, 2024), vexatious-litigant designations must adhere to procedural norms. Additionally, *Kennard Law P.C. v. United Airlines, Inc.*, No. 23-20430 (5th Cir. Aug. 8, 2024), clarifies that noncompliance undermines the motion's validity and violates Plaintiff's due process rights.

7. **Snap Removal to Federal Court is Judge Shopping:** The Plaintiff asserts Defendants' snap removal of a state court case was in bad faith. This pattern was seen in both 2018 lawsuits as well, where Burkes' cases were randomly assigned back to Judge Hittner.

In these proceedings, the Defendants violated the automatic bankruptcy stay, relying upon contrived orders which invent jurisdiction. This manipulation aims to obstruct the Plaintiff's constitutional right to access the courts, ultimately serving the sole purpose of illegally seizing her home. The Defendants actions demonstrate a blatant disregard for the legal process and the protections afforded to the Plaintiff.

This behavior serves as a distraction from the essential facts: any purported lien the Defendants claim to hold has already been extinguished under Texas law. Their attempts to manipulate the proceedings do not change the reality of the legal landscape, where the Plaintiff's rights remain intact and any claims to a lien lack validity.

Such tactics only highlight the Defendants' desperation and the weakness of their position.

### SEVEN LAWSUITS? ACTUALLY, IT'S ONLY TWO TEXAS LAWSUITS

Before a court **may** find that a plaintiff is a vexatious litigant in Texas, the defendant seeking the finding must show…that the plaintiff, "in the **seven-year** period immediately preceding the date the defendant ma[de] the [vexatious-litigant] motion . . . , has commenced, prosecuted, or maintained **at least five litigations as a pro se litigant** other than in a small claims court that have been . . . **finally** determined **adversely** to the plaintiff, see Tex. Civ. Prac. & Rem. Code § 11.054(1)(A).

The Plaintiff responds with particularity to the motion, Section II (3-15).

The "physical" number of lawsuits filed by the Plaintiff post-2018 is not material to the underlying reasons for each lawsuit. Even relying solely on the "physical" count, there are only **two** lawsuits which were ultimately determined adversely to the Plaintiff, not **seven**.

To clarify this conclusion, consider the following:

The Defendants have included lawsuits that are over seven years old at the time of their motion, which should be excluded.

This means the first lawsuit is not applicable, and the second lawsuit is misrepresented in

4

their second motion, where a case filed by DBNTCO is wrongly attributed to the Plaintiff. This Deutsche Bank lawsuit should also be stricken from the count.

This leaves five lawsuits remaining according to the Defendants' motion.

<u>The third lawsuit</u> (first "physical" lawsuit) involves the case against the mortgage servicer, Ocwen. This was filed in Harris County District Court and is required to be treated as an "independent" suit per the Fifth Circuit's guidelines.

Simultaneously, the Plaintiff filed a suit against the Defendants' counsel, identified as the fourth lawsuit (second "physical" lawsuit). This separate filing was prompted by the shocking admission from Mark Hopkins that he intentionally withheld the mortgage loan file from the Burkes. Additionally, the pro se Burkes chose not to include other parties in the Ocwen suit to maintain its status as an "independent" lawsuit, understanding that adding multiple parties could jeopardize it.

<u>The fifth lawsuit</u> (third "physical" lawsuit) aims to challenge the judgment in the Ocwen case, as rendered by the Fifth Circuit, and is void due to the "ClerkGate" scandal. Similar to the Ocwen lawsuit's need for independence, this case had to be filed in the court where the original judgment was issued. The Plaintiff disagrees with Judge Bennett's legal interpretation regarding the types of lawsuits that can "attack" a prior judgment, a view that law professors have criticized as overly complicated. Even so, regardless of the final judgment, Judge Bennett's decision mandated dismissal without prejudice, allowing this case to be excluded.

<u>The sixth lawsuit</u>, filed in the District of Minnesota, is an out-of-state federal case that can also be excluded. It was dismissed without prejudice and involved challenges to "the judicial machinery itself." Notably, the court opted to dismiss the case rather than transfer it, which is the standard procedure in similar circumstances, and this refusal contributed to the subsequent

5

decision to appeal to the Eighth Circuit. Since this federal case was (i) out-of-state and/or (ii) dismissed without prejudice, it is not applicable.

<u>The seventh lawsuit</u>, filed in Harris County District Court to prevent a time-barred foreclosure (subject of these proceedings), should also be excluded from any "physical" case count, as it has not been decided and lacks a final judgment.

Applying "physical" case counting per Tex. Civ. Prac. & Rem. Code § 11.054, the first two lawsuits filed simultaneously in 2018 should be included. The potentially third and final "physical" lawsuit is the 2021 federal case challenging the judgment before Judge Bennett. However, it is undisputed that this case should have been dismissed without prejudice. Plaintiff has determined this should be excluded, as the error is valid on its face of the order.

Under Texas law, a minimum of five lawsuits within the last seven years is required to even consider an individual as a vexatious litigant.

**Summary:** When applying the proper legal standards, the <u>seven</u> lawsuits attributed to the Plaintiff effectively translate to only **<u>two</u> actionable lawsuits** according to Texas law. The Defendants motion should be DENIED on this basis alone.

### THE STANDARD FOR A PRE-FILING INJUNCTION HAS NOT BEEN MET

First, in section at (23) the Defendants admit "The District court has the power" under section 1651 and not the Defendants. This motion should be stricken as discussed in the "Seven Reasons Why" section.

Second, the Plaintiff does not even come close to meeting the "level of vexatiousness" necessary for the court to use its inherent authority, but even if Plaintiff met the level, the court would be required to consider lesser sanctions first.

Third, Section 1915 (26) is the In Forma Pauperis ("IFP") statute (27) and inapplicable to

the Plaintiff, who pays for her lawsuit costs and fees and is not subject to pre-screening; *Brewster v. Abendroth*, 3:24-cv-671-K-BN, at *1 (N.D. Tex. Apr. 3, 2024).

## THE FOUR-PRONG TEST

"(1) the party's history of litigation...; (2) whether the party had a good faith basis...; (3) ...the burden on the courts and other parties...; and (4) ...alternative sanctions." - *Baum v. Blue Moon Ventures,* 513 F.3d 181, 189 (5th Cir. 2008)

Defendants recite the four-prong test (27) and proceed to detail why they believe that the four tests apply to Plaintiff (28-35). Plaintiff summarizes each test and why they do not apply.

**(1) The History (28-29):** Paragraph 28 is largely a diatribe. In paragraph 29, the Defendants attempt to undermine the Plaintiff's financial status, completely reversing the allegation made by Mark Hopkins in open court, where he inferred the Burkes were hiding assets. (4:11-cv-01658, SDTX, Doc.126, P.13-14). Regardless of the circumstances, these Defendants will engage in bad faith advocacy, shifting their positions with groundless accusations to manipulate the court and distract from the substantive issues at hand.

**(2) Good Faith (30-32):** In paragraph 30, Judge Bennett adopted the litigation history presented in the Defendants' vexatious litigant motion verbatim; nonetheless, he correctly denied their motion. However, the adopted litigation history has proven materially inaccurate, with Texas courts agreeing with the Plaintiff's objections as further elaborated in this motion. See; *Serafine v. Crump,* No. 23-0272 (Tex. June 21, 2024).

In paragraphs 31 and 32, there has been one consistent thread throughout these federal proceedings: the Defendants' sinister gamesmanship. The Fifth Circuit has succinctly defined fraud as implying "bad faith, intentional wrongdoing, and a sinister motive." Fraud is often inferred from conduct that is likely to mislead or conceal (*Payne v. C.I.R,* 224 F.3d 415, 420

7

(5th Cir. 2000)).

By misleading this court, the Defendants fail to acknowledge, defend, or even mention the true purpose of the Plaintiff's civil lawsuit; to prevent any and all attempts by the Defendants using an expired and deficient Order and redundant power of sale to execute illegal nonjudicial foreclosure of her home and as discussed in writing with Defendants appointed substitute trustee's counsel, Mark Cronenwett (MSJ, p.9, p.12(1)). Additionally, the Plaintiff still seeks to obtain quiet title to her property, which is clouded by a void lien (MSJ p.16-18).

By engaging in deceptive practices, the Defendants further conceal these essential facts. They are fully aware that the statute of limitations has expired, and along with it the power of sale. Their silence in their court pleadings will not change that reality.

It is evident that their only hope lies in persuading the federal court to label the Plaintiff as a vexatious litigant. They aim to secure a pre-filing injunction to facilitate the execution of foreclosure in violation of established Texas law.

(3) **Burden (33-34):** In response to paragraph 33, the only burden is carried by Joanna Burke in her legal attempts to end this character assassination by Defendants and their counsel who have a repugnant history of admonishments, sanctions and billions of dollars in fines, as detailed recently in the Texas cases and subsequent settlements involving the Defendants (*e.g. Ocwen Loan Servicing, LLC v. Jones,* No. 13-22-00425-CV, Tex. App., filed Sep. 19, 2019). In response to paragraph 34, see the sections below addressing the courts involvement directly.

(4) **Alternatives (35):** First, the Defendants conveniently overlook that, until November 29, 2018, the Plaintiff successfully defeated DBNTCO twice in this court, while it was the Defendants who appealed, extending the litigation unnecessarily.

Second, in August 2023, the Defendants expressed a desire to settle the dispute. Their

8

settlement offer is available for in camera review to maintain the confidentiality of the discussions. This suggests that (a) the Plaintiff's lawsuits are made in good faith and have merit, and (b) there is a viable path to resolving this protracted dispute without further litigation or court intervention.

Indeed, a settlement was reached earlier this year after a $4 million judgment involving the same Defendants in Texas. See; Plaintiff's Response to Defendants MSJ, Oct. 3, 2024, p.2 (7), p.8-10, p.14, p.18 (*Ocwen Loan Servicing, LLC v. Jones,* No. 13-22-00425-CV, Tex. App., filed Sep. 19, 2019) (MSJ, p.14: EXHIBIT DBJONES-MSJ). The presiding judge in Jones was appalled by the Defendants' "criminal" conduct, which led to the conversion of traditionally capped damages into millions of dollars in exemplary damages for the homeowners. The Joneses have similarly suffered egregious abuses from the Defendants since the financial crisis, including multiple fraudulent foreclosures, revealing a striking pattern.

Alternatively, the Plaintiff could seek a judgment of quiet title as required by Texas law and subsequently pursue "criminal" damages in alignment with the Jones award..

### DEFENDANTS AND HOPKINS' SCANDALOUS TRACK RECORD OF FRAUD

*"Federal and state regulators and prosecutors have determined that Deutsche Bank, Ocwen, and Homeward have engaged in systematic mortgage fraud and abuse for years, before, during and after all relevant times to the claims made in the lawsuit.*

*Despite multiple findings of fraud and abuse, and consent orders requiring future compliance, Bank Defendants have: failed and refused to correct their misconduct. Plaintiffs Consuelo Jones and Gabriela Jones are victims of Bank Defendants' pattern of fraud and abuse."*

– citing from *Jones* case above; Findings of Fact and Conclusions of Law from
the 93rd District Court in Texas

**Plaintiff vs. Defendants History:** The Defendants have faced billions in fines and

9

penalties, cojoined with sanctioned foreclosure mill, BDF (*Thomas v. Prof'l Law Firm & Corp. of Barret, Daffin, Frappier, Turner & Engel L.P.,* CIVIL ACTION No. 4:13-cv-2481, at *4 (S.D. Tex. Aug. 19, 2014)). BDF represented DBNTCO from 2011-2015, where Shelley Hopkins was initially employed. Defendants' counsel, Mark Hopkins of Hopkins & Williams, PLLC, and Shelley Hopkins, "of counsel" for BDF and jointly as Hopkins Law, PLLC, have violated numerous laws since their unannounced arrival in 2015/2016, after the Burkes defeated DBNTCO in a bench trial where the bank failed to produce any reliable evidence (4:18-cv-04543 Doc. 13, 01/25/19 in TXSD, P.1.).

**Concealing Evidence:** The Burkes were unaware of the critical withholding of their mortgage loan file, which Mark Hopkins admitted in open court. This concealment occurred after the case was remanded in 2017, when the Burkes' "fraud" claim had been dismissed, yet no sanctions were imposed for this act.

**Concealing Contradiction:** Mark Hopkins claims foul play, arguing that withholding evidence is 'dishonest' while seeking relief from the court.

> "On September 13, 2018, BONYM moved for a new trial and raised the settlement agreement as one of the basis for the new trial. The motion essentially stated; "Your honor we have this settlement agreement were The Rileys agreed to an uncontested foreclosure, our former counsel was unaware of the settlement agreement and The Rileys were dishonest and remained silent on the existent of this agreement. (paraphrased)." – Mark Hopkins.

See; Fifth Circuit Case: 21-40383 Document: 00516057803 Page: 21: 10/18/2021.

**Shelley Hopkins' Perjury:** In *Hicks v. Cenlar FSB* (4:20-cv-01661, SDTX, Doc. 25-9, 07/28/21), shortly after Shelley Hopkins joined as co-counsel, she submitted a doctored affidavit for attorney fees related to BDF's sanctions (*Schmitgen v. Servis One, Inc.*, 2:18-CV-00074, Doc. 46, Jan 16, 2020).

Disclosures, drafting Rule 26 Expert Designations, and drafting Defendants' Motion for Summary Judgment and client affidavit as well as attendance at status conferences. I have currently expended 23.8 hours of time and expect to expend approximately 2 more hours on reviewing and reply to Plaintiff's MSJ response which totals 25.8 hours through the conclusion of this lawsuit. Defendant has also incurred costs in the amount of $406.68.

4. The Texas Civil Practices and Remedies Code §38.001 et. seq. provides for fair, usual, reasonable, and customary attorneys' fees in this matter. Reasonable attorney's fees and costs through the conclusion of this mater are $5523.68.

*signature*

Crystal Gee Gibson
Date: May 5, 2021

*The manually affixed signature of Crystal G. Gibson to the Affidavit for attorney's fees.*

**PPP Loan Fraud:** Public records indicate that "Hopkins Law, PLLC" reported itself as a female-owned business during the PPP loan period and claimed to employ at least three people. Allegations arise that the company misrepresented its situation, mirroring aspects of the case against Mr. Crowther regarding nominee loans and false pretenses (*United States v. Crowther*, No. 2:20-cr-00114-JLB-MRM, at *6 (M.D. Fla. Jan. 6, 2021)).

"There are 2 PPP loans for a total of $93,227 in our database for businesses with the name "Hopkins Law PLLC" in Austin, TX. This this is typically due to the same business receiving both first and second-draw loans." (And to qualify for the second loan you need to show a 25% reduction in income. https://2dobermans.com/woof/58).

**Document Fabrication in DBNTCO Case:** Mark Hopkins sought to reopen the trial record to present the "wet ink original of the Note" well after the deadline, which Hon. Stephen Wm. Smith criticized as an inappropriate late request (*Deutsche Bank Nat'l Trust Co. v. Burke*,

11

4:11-CV-01658 (S.D. Tex. July 31, 2015)).

**PNC Document Fabrication:** In *PNC Mortg. v. Howard*, 616 S.W.3d 581, 583 (Tex. 2021), another foreclosure case, Hopkins' attempt to introduce "new evidence" was rejected by the judge.

> "After trial, PNC discovered a piece of evidence (a proof of mailing of the Notice of Acceleration to Mr. Howard) which had previously been unable to be located. PNC therefore moved for the admission of the additional evidence (CR 818 – 894). The Trial Court denied the motion on September 18, 2017. (RR. Vol.3, page 40, line 8)."

He also misrepresented the use of a pre-merger name.

**Sanctions and Referral to the State Bar:** Sanctions and a referral to the State Bar are warranted due to the mandatory ethical duties of judges (*Warrilow v. Norrell*, 791 S.W.2d 515, 523 (Tex. App. 1990); *Comm'n for Lawyer Discipline v. Cantu*, 587 S.W.3d 779, 784 (Tex. 2019)).

## THE SORDID CHIEF JUDGE OF SDTX (BK) CORRUPTION SCANDAL

In advance of this motion, the Plaintiff prepared a detailed VERIFIED RESPONSE TO PHH'S MOTION FOR SUMMARY JUDGMENT ("MSJR", Oct. 3, 2024) to the Defendant's oversized, unauthenticated, and generally incompetent MSJR. She respectfully requests that this court take judicial notice of that MSJR and 18 supporting exhibits and her VERIFIED MOTION TO DISMISS FOR LACK OF JURISDICTION ("DLOJ", Oct. 3, 2024).

In closing her DLOJ (p,19), she cited to Chief Judge Alia Moses opinion in the high-profile whistleblower case involving former Chief Judge David Jones and his not-so-secret romantic relationship with former clerk Elizabeth "Liz" Freeman. This federal court scandal in Texas, marked by greed, sex, money, fraud, and corruption, has led to numerous lawsuits from parties seeking restitution for tainted opinions issued by Jones. Allegations also suggest that

appeals from his questionable decisions were erroneously affirmed by his judicial colleagues.

Accusations of abuse of power, nepotism and conflicts of interest have emerged, implicating a close-knit group of Texas bankruptcy law firms, including counsel from both sides of the bench with personal ties to Jones and Freeman. This scandal, involving the judiciary and prominent Texas law firms overseeing billions in bankruptcy restructuring annually, has triggered efforts to contain the fallout and allegations that these conflicts were well-known in the courthouse and Texas legal community, starting with Jones's resignation instead of impeachment.

**Judicial Statement of Significance:** The Chief Judge's entire passage deserves to be embedded in this motion due to its importance and relevance to these proceedings:

> "Just because the Plaintiff and his lawyers have previously violated Rule 11 does not mean they have done so here. Assuming the truth of the Plaintiff's allegations, he was *a victim of a conspiracy that deprived him of fair access to the federal courts* and extinguished a valuable interest in McDermott. Although the Plaintiff fails to state a valid cause of action, his allegations, if true, show that he suffered injustice in Jones's courtroom. The Court will not punish the Plaintiff for seeking to redress his grievances in a forum in which, for once, the deck is not stacked against him. True, the Plaintiff has a history of filing meritless claims about supposed public corruption.
>
> But this time, he was right. Time and time again, the most powerful players in the bankruptcy system dismissed him as another crazed, vexatious litigant. And now, in one final twist of the knife, Kirkland seeks to punish the Plaintiff for having the audacity to sue it. The Court will not oblige. After all, it was the Plaintiffs audacity that brought this scandal to light. Had the anonymous letter arrived in anyone else's mailbox, perhaps Jones would still be on the bench, awarding millions of dollars to Kirkland and Jackson Walker."

*Van Deelen v. Jones*, 4:23-CV-03729-AM, at *35-36 (S.D. Tex. Aug. 16, 2024)

## JUDICIAL SCANDALS ILLUMINATE JOANNA BURKE'S 13-YEAR FIGHT FOR JUSTICE

The "Jones Romance Scandal" exemplifies a broader issue in the courthouse, revealing attempts by Defendants and the court to maintain invented jurisdiction in order to facilitate restricting the constitutional right of access to the courts for the Plaintiff, an 85-year-old widow. The goal is to impose a pre-filing injunction, mislabeling her as a vexatious litigant for exposing the fraudulent practices of a predatory lender and its appointed counsel. Such restrictions would enable the Defendants to unlawfully seize her homestead of over 22 years, potentially resulting in her eviction through force, including lethal means.

This effort aims to silence the Plaintiff and targets her First Amendment right to free speech, perpetuating a personal vendetta against her as an honest elder citizen. This is supported by the Defendants continued bad faith, scandalous lies, and untruths scrawled with sinister motives at 19-20 of their motion. A search of public records easily confirms the true ownership of the online blogs, which excludes Plaintiff. Plaintiff denies all these unfounded and scandalous allegations. As for her first amendment rights to support any news media outlet or high-profile public figure on social media or otherwise, that isn't subject to scrutiny in these proceedings, where all parties are protected by judicial-proceedings privilege.

In 2017, Defendant's counsel, Mark Hopkins, openly admitted to concealing the mortgage loan file during a status conference with Magistrate Judge Stephen Smith (*Deutsche Bank National Trust Company v. Burke*, 4:11-cv-01658, SDTX, Doc.126, P.13, TRANSCRIPT re: STATUS CONFERENCE held on 1-27-17), revealing a lack of documentation for the alleged $615,000 mortgage debt (Doc. 28(2)). This admission raises serious concerns about transparency and justice.

A historical context highlights the hostility of this court towards the Burkes' as early as

14

2011, such as Judge Lynn Hughes' ex parte conversation in 2011, where he advised Ackerman's lawyers to "get their ducks in line before coming back", after the Plaintiff pointed out discrepancies in the mortgage papers presented. They never returned.

In light of the Fifth Circuit's opinions in *Burciaga v. Deutsche Bank Nat'l Trust Co.* and *Christiana Tr. v. Riddle*, the Burkes initiated legal action against Ocwen Loan Servicing LLC for concealing the mortgage loan file. As they filed a new lawsuit, they also sought to intervene in three other cases, hoping to recover their missing file.

A potential breakthrough occurred in a Florida case where a federal judge released a loan file, yet denied their motion to intervene, further complicating their efforts. Meanwhile, in Texas, the Defendants moved swiftly for a dismissal, which ultimately occurred without due process or discovery.

Despite obstacles, the Plaintiff remained determined to obtain the missing mortgage file. She filed a new lawsuit in Minnesota, tied to a high-profile case scrutinizing predatory loans, with findings that upheld claims of predatory lending practices related to Ocwen during the 2008 financial crisis.

The Plaintiff asserts that if the evidence were presented to an independent jury, it would reveal a deliberate affront to justice aimed at unlawfully seizing her home.

**"Remember the LITAMO"** will be her rallying cry to supporters and her last stand as an activist for truth, freedom, and justice in her Alamo-inspired Texas homestead along the San Jacinto River.

### THIS FEDERAL DISTRICT COURT'S "HAM-FISTED BULLYING"

*"This case is the most recent of many cases that Plaintiff [Joanna Burke] has filed over the past several years to thwart foreclosure proceedings..."*

*Magistrate Judge Christina Bryan (S.D. Texas, Houston Div'n, Doc. 31, Sep.18, 2024)*

15

**Warfare from Magistrate Judge Bryan:** In light of all these recent revelations, the Plaintiff has reflected on this initial order, issued after Judge Werlein's hit-and-run self-recusal. Former Texas Supreme Court Justice and current Fifth Circuit Judge Don Willett noted that the Constitution was crafted to restrain government overreach:

> "Our Framers understood that government was inclined to advance its own interests, even to the point of ham-fisted bullying, which is precisely why the Constitution was written—to keep government on a leash, not We the People. But individual liberty pays the price when our ingenious system of checks and balances sputters, including when the judiciary subordinates liberty to the congeries of group interests that dictate majoritarian outcomes."

**Hostility from Judge Werlein:** The hostility started when Judge Werlein's asserted that this court had 'related to' jurisdiction over the case. His dismissal of motions displayed a lack of judicial restraint and a failure to adhere to the established rule of orderliness, specifically rejecting the General Order (2012-06) that transfers jurisdiction to the bankruptcy court. The Plaintiff finds no judgment supporting Judge Werlein's analysis; the Chief Bankruptcy Judge explicitly rejected it.

**Mislabeling of Bankruptcy Protections:** Judge Werlein's reasoning implies that there is no bankruptcy stay for cases in state court to halt a time-barred wrongful foreclosure, labeled as "by the debtor." He ignored recent federal orders that automatically stayed such cases, including his own (DLOJ, p.3-4).

**Denial of Amendments:** He also denied the Plaintiff's attempts to amend her pleadings Doc.18-19), rejected her Partial Motion for Summary Judgment (Doc.20; MSJ, p.16), and dismissed remaining parties (Doc.23) to restrict her case before the court.

**Judicial Activism:** Judge Werlein's actions exemplify judicial activism, particularly through his prejudgment of issues, undermining due process and impartiality, as witnessed in his warning, Doc.19 (p.3-4).

**Failure to Consider Evidence:** His actions indicate a disregard for thorough examination of facts.

**Ignoring Precedents:** By asserting 'related to' jurisdiction without basis, he disrupted established legal parameters, raising questions about judicial integrity.

**Guidance to Defendants:** After his ex parte communications decimated the Plaintiff's case by proclaiming 'related to' jurisdiction, thereafter issuing a collected series of orders, combined with his instructions to the Defendants on how to obtain a favorable judgment, based on a misleading understanding of the facts—commonly referred to as prejudging the case, reveal bias and compromise his role, confirmed by his related orders and hasty departure.

**Questioning Bad Faith:** As stated by the Chief Bankruptcy Judge overseeing another "Jones Romance Scandal" case, "The Court finds this argument to not only be entirely without merit but made in bad faith." *In re Prof'l Fee Matters Concerning the Jackson Walker Law Firm*, No. 23-645, at *13 (Bankr. S.D. Tex. Aug. 16, 2024)

**The Plaintiff agrees:** Judge Werlein's arguments lacked jurisdiction, lacked merit and were made in bad faith.

## CAPACITY, VOID JUDGMENTS AND USURPATION

**Capacity to Act:** As established in *Ex parte Eastland*, 811 S.W.2d 571, 572 (Tex. 1991), actions taken by a trial judge that exceed their authority are void. Here, Judge Werlein has acted beyond his jurisdiction, lacking the capacity to issue valid orders. This is further supported by *Sotelo v. Scherr*, 242 S.W.3d 823, 830 (Tex. App. 2007), which confirms that a judgment is void if the court lacks jurisdiction, as reiterated in *Browning v. Prostok*, 165 S.W.3d 336, 346.

**Legal Implications of a Void Judgment:** A void judgment is essentially a legal nullity, conferring no rights upon any party. As stated in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 343

(1872), such judgments are treated as if they never occurred, echoed in *Schmidt v. Rodriguez*, CASE NO: 12-07018 (Bankr. S.D. Tex. June 15, 2013), confirming that void judgments neither bestow nor deprive rights.

**Judicial Accountability and Immunity:** Judicial officers, including the judges in these proceedings lack immunity when acting outside their jurisdiction. *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980), illustrates that no immunity extends to judges acting beyond their authority, emphasizing accountability for actions taken without proper capacity.

**Usurpation of Judicial Power:** The usurpation of judicial power is central to this case. The Plaintiff contends that Judge Werlein has exceeded his jurisdiction, which is crucial for establishing the judgment as void. *In re Abbott*, 954 F.3d 772, 782 (5th Cir. 2020), states that usurpation occurs when courts exceed their jurisdiction or fail to act as required.

In closing, this highlighting serious constitutional violations and Plaintiff questions this court's inherited authority to decide this motion.

## DECLARATION

Pursuant to Texas Civil Practice and Remedies Code Section 132.001 and "In lieu of a sworn affidavit, a litigant may submit an unsworn declaration as evidence against summary judgment. See 28 U.S.C. § 1746.", I hereby provide my unsworn declaration. My name is Joanna Burke, my date of birth is Nov. 25, 1938, my address is 46 Kingwood Greens Dr, Kingwood, Texas, 77339, and I declare under penalty of perjury that all information herein is true and correct.

## CONCLUSION

"The kind of advocacy shown by this record has no place in the administration of justice and should neither be permitted nor rewarded; a trial judge should deal promptly with any breach." (*United States v. Young*, 470 U.S. 1, 9 (1985)). It is patently obvious this motion has been brought

in bad faith and should be DENIED. A proposed order is provided.

RESPECTFULLY submitted this 7th day of October, 2024.

*Joanna Burke*

Joanna Burke, Harris County
State of Texas / Pro Se

46 Kingwood Greens Dr
Kingwood, Texas 77339
Phone Number: (281) 812-9591
Fax: (866) 705-0576
Email: joanna@2dobermans.com

## CERTIFICATE OF WORD COUNT

I, Joanna Burke, hereby certify that this VERIFIED RESPONSE TO PHH MORTGAGE CORPORATION'S MOTION TO DECLARE PLAINTIFF JOANNA BURKE AS A VEXATIOUS LITIGANT, submitted on October 7, 2024, complies with the 5,000 word limit set by the Court. The document contains a total of 4,969 words, as calculated by Microsoft Word.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on October 7, 2024 as stated below on the following:

**VIA U.S. Mail:**

Nathan Ochsner
Clerk of Court
P. O. Box 61010
Houston, TX 77208

**VIA e-Mail:**

Shelley L. Hopkins
Mark D. Hopkins
HOPKINS LAW, PLLC
2802 Flintrock Trace, Suite B103
Austin, Texas 78738
mark@hopkinslawtexas.com

shelley@hopkinslawtexas.com

PHH MORTGAGE CORPORATION

*/s/ Joanna Burke*

Joanna Burke, Harris County
State of Texas / Pro Se

46 Kingwood Greens Dr
Kingwood, Texas 77339
Phone Number: (281) 812-9591
Fax: (866) 705-0576
Email: joanna@2dobermans.com

20